# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHELDON STEPHENS**, | : | CIVIL ACTION NO. 1:13-CV-712 |
| Plaintiff, | : | (Chief Judge Conner) |
| v. | : | |
| **KEVIN CLASH**, | : | |
| Defendant. | : | |

## MEMORANDUM

Plaintiff Sheldon Stephens ("Stephens") filed the above-captioned action pursuant to 18 U.S.C. § 2255, alleging violations of the Child Abuse Victims' Rights Act of 1986, 18 U.S.C. § 2251 *et seq.*, and a claim for battery from childhood sexual abuse under Pennsylvania law. (Doc. 1). Presently before the court is defendant Kevin Clash's ("Clash") motion (Doc. 11) to transfer, stay, or dismiss the above-captioned action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the court will grant the motion in part, deem it withdrawn in part, and order additional briefing related to subject-matter jurisdiction.[1]

---

[1] Clash initially moved to transfer the instant matter to the U.S. District Court for the Southern District of New York — where three similar cases had been pending — and to stay the action pending the court's decision. (Doc. 12 at 1). The Southern District of New York recently dismissed all three cases, Singleton v. Clash, Nos. 12 Civ. 8465 (JGK), 12 Civ. 8948 (JGK), 13 Civ. 2172 (JGK), 2013 WL 3285096 (S.D.N.Y. July 1, 2013). As a result, Clash has withdrawn the motion to transfer or stay the action and now requests that the court address the merits of the motion to dismiss. (Doc. 21 at 1-2).

I.   **Factual and Procedural Background**

The instant motion to dismiss comes before the court pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, the court will "accept all well-pleaded allegations in the complaint as true, and view them in the light most favorable to the plaintiff."[2] Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004).

Stephens was born in July 1988[3] and currently resides in Harrisburg, Pennsylvania. (Doc. 1 ¶¶ 1, 9; Doc. 19 at 1). In 2004, when Stephens was sixteen

---

[2] Clash asserts that Stephens is not entitled to a presumption that his allegations are true because there is clear documentary evidence refuting the claims. (Doc. 12 at 4). The parties allegedly settled Stephens' claims in November 2012 pursuant to a confidential settlement agreement, which Stephens purportedly breached by making or authorizing public statements about the agreement. (Id. at 3-4). In accordance with the settlement, Stephens released a statement in which he admitted in writing that his claims were false and that his "sexual relationship with Mr. Clash was an adult consensual relationship." (Id., Ex. A). The court is generally limited to the facts contained in the complaint in its review. *In re* Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). However, the court may consider documents integral to or explicitly relied upon in the complaint. Id.; see Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (stating that defendant may attach as an exhibit to a motion to dismiss a document upon which plaintiff's claims are based if the document is an "undisputedly authentic document"). Thus, under this narrow exception, the court may only consider evidence upon which the complaint is based. The exception seeks to prevent plaintiffs from asserting claims based upon an isolated statement, which is directly refuted by the entire document in context. *In re* Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. The settlement statement Clash seeks to introduce is neither attached to nor integral to Stephens' complaint. (See Doc. 1; Doc. 19 at 19). The alleged statement may negate Stephens' claims, but the statement attached to Clash's motion to dismiss is not undisputedly authentic. (See id.) Therefore, the court will not consider the settlement statement in deciding the motion at bar.

[3] The court notes that Stephens does not provide his specific date of birth in the complaint.

2

years old, he met Clash at a social networking event for models and actors. (Doc. 1 ¶ 10). Clash was born in 1960 and is a known puppeteer and voice actor for children's programming, including the voice of Elmo on the television show, Sesame Street. (Id. ¶¶ 2, 8). At their first meeting, Clash allegedly told Stephens that he would help Stephens with his acting career. (Id. ¶ 11). Clash encouraged Stephens to verify his background and credentials on the Internet and to send him modeling pictures for distribution to his contacts in the industry. (Id.) After the networking event, Stephens and Clash remained in contact by telephone. (Id.)

During their telephone conversations, Clash expressed an interest in having a sexual relationship with Stephens. (Id. ¶ 12). Clash also showered Stephens with "attention and affection." (Id.) Eventually, Clash made arrangements for Stephens to visit him by sending a chauffeur to transport Stephens from Harrisburg to New York. (Id. ¶ 13). After Stephens arrived at Clash's apartment in New York, Stephens and Clash purportedly engaged in sexual intercourse. (Id. ¶ 14). According to the complaint, this pattern of sexual activity began when Stephens was sixteen years old and continued for a period of several years.[4] (Id.)

On March 18, 2013, Stephens filed his complaint (Doc. 1) against Clash under the Child Abuse Victims' Rights Act of 1986, which provides a private right of action

---

[4] Stephens' complaint alleges that the "pattern of sexual activity . . . continued over a period of years," but it does not provide the date of the last sexual encounter. (Doc. 1 ¶ 14). The applicable statutory law only penalizes sexual activity with a *minor*. See 18 U.S.C. §§ 2255, 2422, 2423. The last possible date that Clash could have violated these statutes is thus one day before Stephens' eighteenth birthday in July 2006.

3

for civil damages for victims of child sexual exploitation in violation of certain criminal statutes.[5] See 18 U.S.C. § 2255. Specifically, Stephens claims that Clash violated 18 U.S.C. § 2423, which prohibits the knowing transportation of a minor in interstate or foreign commerce with the intent to engage in criminal sexual activity, and 18 U.S.C. § 2422, which prohibits using any facility or means of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in criminal sexual activity or to travel in interstate commerce for such purpose. Stephens also asserts a state law claim for battery based upon childhood sexual abuse. See 42 PA. CONS. STAT. § 5533(b). Stephens alleges that he was a minor when his contact with Clash began, and that he was not emotionally or psychologically prepared for a sexual relationship with an adult. (Doc. 1 ¶ 17). As a compliant victim, Stephens contends that he was not immediately aware of his injuries, and he further contends that he did not become aware of the adverse psychological and emotional effects, or their causal connection to Clash's conduct, until 2011. (Id. ¶¶ 17-18).

Clash filed this motion (Doc. 11) on May 15, 2013, asserting that the statute of limitations bars Stephens' claims against him under 18 U.S.C. § 2255. (Doc. 12 at 8-9). Stephens opposes the motion on the ground that the statute of limitations did not begin to run until he became aware of his injury and its cause under the

---

[5] Stephens contends that the court has both federal question and diversity jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1332. (Doc. 1 ¶¶ 4-5). The Court will address issues of jurisdiction as necessary throughout the discussion of Clash's motion.

discovery rule. (Doc. 19 at 11-12). Regarding the state law claim, Clash argues that Stephens failed to plead "forcible compulsion," an element of battery based upon childhood sexual abuse.[6] (Doc. 12 at 13, 16); see 42 PA. CONS. STAT. § 5533(b)(2)(ii). Clash also alleges that, in the event the two federal claims are dismissed, Stephens cannot satisfy the amount in controversy requirement for diversity jurisdiction over the remaining state law claim. (Doc. 12 at 18).

## II. **Jurisdiction and Legal Standard**

The court has jurisdiction over the instant matter because the complaint presents a question of federal law. (Doc. 1 ¶ 4); see 28 U.S.C. § 1331. Stephens seeks to recover civil damages for injuries he suffered as a victim of child sexual exploitation. See 18 U.S.C. § 2255(a). The court may exercise supplemental jurisdiction over the state law claim for sexual battery because it is related to and shares a "common nucleus of operative facts" with the federal claims, thus forming part of the same case or controversy. 28 U.S.C. § 1367; Lyon v. Whisman, 45 F.3d 758, 759-60 (3d Cir. 1995) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). Stephens also alleges that the court may exercise diversity jurisdiction over all of his claims. (Doc. 1 ¶ 5). According to the complaint, the parties are

---

[6] Clash also argues that a claim for battery under Pennsylvania law is time-barred under a two-year statute of limitations. (Doc. 12 at 13-16). In response, Stephens asserts that the applicable statute of limitations for a claim of battery based upon childhood sexual abuse is twelve years. (See Doc. 19 at 19); see also 42 PA. CONS. STAT. § 5533(b)(2)(i).

5

completely diverse of citizenship and the amount in controversy as to all claims exceeds $75,000. (Id.); see 28 U.S.C. § 1332(a); 18 U.S.C. § 2255(a).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are

6

sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a *prima facie* case of liability, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).

Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint. See FED. R. CIV. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1974)); see also Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

**III. Discussion**

The instant motion to dismiss presents two main questions for the court's consideration. First, the court must determine whether the statute of limitations expired to bar the claims under 18 U.S.C. § 2255, or whether the discovery rule delayed accrual of the cause of action and, consequently, the statute of limitations. Second, if the court dismisses the Section 2255 claims, the court must decide whether it retains jurisdiction over the state law claim before the court considers whether Stephens sufficiently pleaded the claim for battery based upon childhood sexual abuse. The court will address each question *seriatim*.

**A. Statute of Limitations for Claims under 18 U.S.C. § 2255**

Clash moves to dismiss both of Stephens' claims under 18 U.S.C. § 2255 as time-barred under the statute of limitations.[7] The applicable statute of limitations for Section 2255(b) provides as follows:

> Any action commenced under this section shall be barred unless the complaint is filed within six years after the right of action first accrues or in the case of a person under a legal disability, not later than three years after the disability.

---

[7] The court may consider Clash's statute of limitations defense in the context of his Rule 12(b)(6) motion to dismiss because the complaint is facially non-compliant with the six-year statute of limitations applicable to claims brought pursuant to Section 2255. See 18 U.S.C. § 2255; see also Robinson, 313 F.3d at 135; Oshiver, 38 F.3d at 1384 n.1. In his complaint, Stephens indicates that the injurious violations first occurred in 2004 when he was sixteen years old. (Doc. 1 ¶ 14). However, the latest possible date Clash could commit a violation against a minor is the day before Stephens turned eighteen in July 2006. Therefore, absent an exception to the statute, the complaint would be time-barred if filed anytime after July 2012.

8

18 U.S.C. § 2255(b) (2006).[8] Stephens argues that the federal discovery rule should apply to delay accrual of the cause of action until Stephens became aware of his injury and the causal connection to Clash's conduct.[9]

As a general rule, the statute of limitations begins to run from the moment the potential plaintiff has a "complete and present cause of action." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 195 (1997) (quoting Rawlings v. Ray, 312 U.S. 96, 98 (1941)). In determining an accrual date, the court must defer to congressional directives where Congress has specified an accrual date by "explicit command" or "by implication from the structure or text of the particular statute." Disabled in Action of Pa. v. Se. Pa. Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008) (quoting TRW Inc. v. Andrews, 534 U.S. 19, 27-28 (2001)). Whenever a statute is silent on the issue of claim accrual, the court applies the federal discovery rule, which dictates that a cause of action accrues "when the plaintiff discovers, or with due diligence should have discovered, the injury that

---

[8] On March 7, 2013, Section 2255(b) was amended to extend the statute of limitations to ten years after the right of action first accrues. Clash asserts that the amendment is not retroactive to revive claims that are time-barred prior to its effective date. (Doc. 12 at 9). Stephens does not dispute this assertion; instead, he contends that his Section 2255 claims are not time-barred under the six-year statute of limitations using the discovery rule.

[9] The court notes that Stephens' prior status as a minor has no impact on the accrual of his cause of action under the discovery rule. To the extent Stephens was a minor when his cause of action accrued, Stephens would fall within the ambit of legal disability as explicitly set forth in Section 2255(b). Thus, the statute of limitations expressly takes into consideration Stephens' status as a minor by allowing claims to be filed within six years after cause of action accrues or automatically tolling for three years beyond the age of majority.

9

forms the basis for the claim." Romero v. Allstate Corp., 404 F.3d 212, 222 (3d Cir. 2005). Clash posits that Congress did not intend for the federal discovery rule to delay accrual of a cause of action under Section 2255. (Doc. 21 at 6). Assuming *arguendo* that the discovery rule is applicable to Stephens' federal claims, the court nonetheless holds that Stephens discovered or should have discovered his injury in or before July 2006 and, therefore, Stephens' claims are barred by the six-year statute of limitations.

The discovery rule postpones the accrual of a cause of action where the potential plaintiff is unaware of the injury, from the date he or she was wronged until the date he or she discovers (1) that he or she has been injured, and (2) that such injury has been caused by another party's conduct. Podobnik v. U.S. Postal Serv., 409 F.3d 584, 590 (3d Cir. 2005); Oshiver, 38 F.3d at 1386. The first step in applying the discovery rule to determine the accrual date is to establish when the injurious conduct, as defined by the relevant statute, actually occurred. Disabled in Action of Pa., 539 F.3d at 214. The second step is to determine whether the plaintiff could immediately discover the related injury, or whether there was another date when the plaintiff should have reasonably discovered the injury with due diligence. Id.

Thus, the court must initially focus on when the actionable conduct occurred, and not when the effect of that conduct became problematic. See id. In this case, the relevant conduct is the violation of the criminal statutes that constitute the basis for Stephens' Section 2255 claims. Stephens asserts that Clash violated 18

10

U.S.C. §§ 2422 and 2423, which criminalize transportation of a minor with the intent to engage in criminal sexual activity, and using interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in criminal sexual activity, respectively. See 18 U.S.C. §§ 2422(b), 2423(a). Stephens alleges that the statutory violations first occurred in 2004 and continued for several years. (Doc. 1 ¶ 14). Stephens turned eighteen in July 2006.

The second inquiry of the discovery rule — when Stephens discovered or should have discovered his injury — has both subjective and objective components. See Mathews v. Kidder Peabody & Co., 260 F.3d 239, 250 (3d Cir. 2001). On one hand, a claim accrues no later than when a plaintiff subjectively discovers his or her injuries. Id. On the other hand, the court must objectively determine when the plaintiff had "sufficient information of possible wrongdoing to place [him or her] on inquiry notice or to excite storm warnings of culpable activity." Benak *ex rel.* Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P., 435 F.3d 396, 400 (3d Cir. 2006) (quoting *In re* NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1325 (3d Cir. 2002)).

Stephens contends that he subjectively discovered the causal connection between his injuries and Clash's conduct, and his claim therefore accrued, in 2011. (Doc. 1 ¶ 18). However, the relevant inquiry for Section 2255 claims is not when a plaintiff discovered subsequent harm, but rather when the plaintiff discovered that he was the defendant's victim under the underlying criminal statutes. See Singleton, 2013 WL 3285096, at *7-8. The court finds the Sixth Circuit's analysis of the relevant injury for standing under Section 2255 in Doe v. Boland, 698 F.3d 877

11

(6th Cir. 2012), persuasive.  In Boland, the court of appeals rejected any distinction between victimization under the applicable criminal statutes and personal injury beyond such victimization.  See Boland, 698 F.3d at 881 ("[T]he statute does not create one category of victims and another category of people who suffer personal injuries.").  A victim by definition is someone who suffers an injury.  See id. at 882.  *A plaintiff suffers injuries for purposes of Section 2255 at the same time he or she becomes a victim of a defendant's criminal conduct.*  See id. at 881.[10]  Thus, Stephens became a victim and was injured when Clash violated certain criminal statutes.  See Singleton, 2013 WL 3285096, at *7.  Stephens' assertion that he did not know about his psychological and emotional injuries and their relation to Clash's conduct until 2011 is irrelevant; the court finds that Stephens was a victim of the injurious conduct, and thus aware of his injuries, when it occurred between 2004 and July 2006.

Similarly, under the objective test, the court cannot but conclude that Stephens reasonably should have discovered his injuries when the statutory violations occurred.  Inquiry notice is the key factor in the objective test.  Inquiry notice exists "whenever circumstances exist that would lead a reasonable [person] of ordinary intelligence, through the exercise of reasonable due diligence, to

---

[10] By the plain language of Section 2255, the use of both words, "victim" and "injury," indicates that a victim may also suffer injuries as an adult for the same conduct, such as instances of subsequent distribution of child pornography.  See Boland, 698 F.3d at 881.  The statute simply uses doublets, or two ways of saying the same thing, to reinforce the meaning.  See id.

12

discover his or her injury." Mathews, 260 F.3d at 251. To determine inquiry notice, the court must engage in a two-step analysis. Id. at 252. First, the burden is on the defendant to show the existence of "storm warnings," which are indications or information that would alert a reasonable person to the probability of suspicious circumstances. Id. The burden then shifts to the plaintiff to show that, despite heeding those warnings and exercising reasonable diligence to investigate the suspicious circumstances, the plaintiff was unable to discover his or her injuries. Id.; Benak, 435 F.3d at 400. Otherwise, the court will impute to the plaintiff the knowledge he or she would have acquired through reasonable investigation. Benak, 435 F.3d at 401.

The court finds that Stephens was on inquiry notice at the time of the statutory violations. The determination of whether storm warnings are present is an objective inquiry. Mathews, 260 F.3d at 252. Storm warnings were no doubt present when the violations at issue here occurred. At age sixteen, Stephens was aware that Clash wanted to have a sexual relationship with him. (Doc. 1 ¶¶ 10, 12). Clash purportedly showered Stephens with attention and affection, and Stephens traveled to another state using transportation arranged by Clash. (Id. ¶¶ 12-13). Stephens allegedly engaged in sexual activities with Clash in violation of state criminal laws as well as more than one federal statute. (Id. ¶¶ 14-16). The court concludes that a reasonable person would have been alerted to culpable activity when a teenager traveled across state lines and participated in sexual and other illicit activity with an adult. Accordingly, the court will charge Stephens with

13

inquiry notice of his injuries, absent a showing that he was unable to discover them with due diligence.

Stephens asserts that, as a compliant, minor victim, he could not reasonably be expected to be aware of his injuries and their causal connection to Clash's conduct until 2011. (Id. ¶ 18). As discussed above, the existence of storm warnings does not depend on Stephens' subjective awareness of suspicious circumstances or their relevance. Mathews, 260 F.3d at 252. The factual allegations of the complaint objectively demonstrate the presence of storm warnings. (Doc. 1 ¶¶ 12-14). Accordingly, the date on which Stephens connected his psychological and emotional injuries to Clash's statutory violations is irrelevant to the determination of when his cause of action accrued. See also Singleton, 2013 WL 3285096, at *8.

In order to rebut inquiry notice, Stephens must demonstrate that he was unable to discover his injuries despite exercising reasonable diligence. See Mathews, 260 F.3d at 252. Plainly, he does not satisfy this burden. There is simply no indication that Stephens exercised any diligence in questioning the illicit sexual conduct or related injuries. Such failure is not reasonable to justify delayed discovery of his injuries, nor is it reasonable to delay accrual of the cause of action. See United States v. Kubrick, 444 U.S. 111, 122-23 (1979) ("[F]or a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury . . . . [t]here are others who can tell him if he has been wronged, and he need only ask."); Oshiver, 38 F.3d at 1386 (stating that the discovery rule does not delay the

14

running of the statute of limitations until an injured plaintiff is aware of all facts necessary for a cause of action or that the injury constitutes a legal wrong).

Accordingly, Stephens was aware of sufficient facts related to his injury and its cause to make inquiries and bring claims under Section 2255 at the time of the statutory violations. Stephens should have discovered his injury at the time of the violations, and his cause of action accrued and the six-year statute of limitations began to run no later than July 2006. The complaint was not filed until March 18, 2013, almost seven years after the cause of action accrued. Therefore, the court will dismiss Stephens' Section 2255 claims as time-barred under the statute of limitations.

**B.     Jurisdiction over Claim for Sexual Battery under Pennsylvania Law**

Assuming dismissal of the Section 2255 claims, Clash urges the court to dismiss the state law sexual battery claim for lack of subject-matter jurisdiction. Clash asserts that, upon dismissing the federal claims, the court has no basis to exercise supplemental jurisdiction. Clash further argues that Stephens has not satisfied the amount in controversy requirement to establish diversity jurisdiction as an independent basis for federal jurisdiction.

Dismissal of all federal claims requires the court to consider whether the federal judiciary remains the proper forum for adjudication of the state law claim. Section 1367 of Title 28 of the United States Code vests the court with supplemental jurisdiction over state law claims when they are closely related to federal law claims over which the court exercises original jurisdiction. See 28 U.S.C. § 1367(a).

Dismissal of the federal claims does not automatically deprive the court of jurisdiction over the state claims, but provides a basis on which the exercise of jurisdiction may be declined. See id. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); see also Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995). The Third Circuit has held that the court must dismiss pendent state claims when the federal claims over which the court has original jurisdiction are dismissed "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Lancaster, 45 F.3d at 788; see also Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000). No justification for retaining jurisdiction is apparent. However, Stephens and Clash have not had an opportunity to address the issue of whether dismissal of the federal claims compels dismissal of the entire case under 28 U.S.C. § 1367. Therefore, the court will order concise supplemental briefing on this issue prior to transferring the claim to state court.

The court may also exercise jurisdiction over the state law claim pursuant to an independent basis for jurisdiction. The party asserting jurisdiction bears the burden of showing that, at all stages of the litigation, the case is properly before the federal court. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). In the instant matter, Stephens brought his claims in federal court, asserting both federal question and diversity jurisdiction. (Doc. 1 ¶¶ 4-5). As a result of the

dismissal of the Section 2255 claims, there is no remaining federal question to confer jurisdiction pursuant to 28 U.S.C. § 1331. Thus, Stephens bears the burden of proving continuing diversity jurisdiction. See McNutt, 298 U.S. at 189; 28 U.S.C. § 1332 (conferring jurisdiction when a matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs). Clash does not dispute diverse citizenship because he is a citizen of New York and Stephens is a citizen of Pennsylvania; however, Clash argues that Stephens has not satisfied the amount in controversy requirement.

The Supreme Court established the prevailing standard by which the court must consider a challenge to the amount in controversy requirement:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938). The general rule is to determine the amount in controversy from the complaint itself. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961); Angus v. Shiley Inc., 989 F.2d 142, 145 (3d Cir. 1993). When a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff has the burden of establishing by competent proof and by a preponderance of the evidence that his or her claims exceed $75,000. See McNutt, 298 U.S. at 189; Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995).

Clash alleges that the complaint merely makes "conclusory claims" of compensatory damages and punitive damages for the sexual battery claim under Pennsylvania law. (Doc. 12 at 18). The court notes that Clash's contention is largely a function of the court's dismissal of the Section 2255 claims. Prior to the dismissal of the Section 2255 claims, Stephens clearly satisfied the amount in controversy requirement. The damages for personal injury from child sexual exploitation are deemed to be no less than $150,000. See 18 U.S.C. § 2255(a). Accordingly, in addition to the issue of discretionary exercise of supplemental jurisdiction, the court will grant Stephens an opportunity to present facts by affidavit in support of the amount in controversy to establish diversity jurisdiction. See Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3d Cir. 1990) (holding that, after jurisdiction is challenged, the court must grant plaintiff "an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention") (quoting Local 336, American Federation of Musicians, AFL–CIO v. Bonatz, 475 F.2d 433, 437 (3d Cir. 1973)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (stating that, where the complaint is merely deficient as pleaded, the court should grant leave to amend before dismissal with prejudice). The court will consider whether Stephens

sufficiently pleaded "forcible compulsion" as an element of battery from childhood sexual abuse upon determination of subject-matter jurisdiction.[11]

IV. **Conclusion**

For the above-stated reasons, the court will grant in part Clash's motion (Doc. 11) to dismiss, deem the motion to transfer or stay voluntarily withdrawn, and hold the state law claim in abeyance pending submission of additional briefing regarding subject-matter jurisdiction. Discovery in the instant action will be stayed pending the submission of additional briefs on subject-matter jurisdiction and the court's disposition of the state law claim.

An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: November 18, 2013

---

[11] On October 25, 2013, Clash requested that the court stay discovery pending disposition of his motion (Doc. 11) to dismiss. (Doc. 22). On November 7, 2013, the court granted the motion to stay discovery. (Doc. 25). The court will continue this stay of discovery pending resolution of Clash's motion to dismiss the remaining state law claim. In the event the court maintains subject-matter jurisdiction and denies Clash's motion to dismiss the state law claim, Stephens will have the opportunity to pursue discovery. See 19th Street Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345, 349 (E.D. Pa. 2000) (stating that a stay is proper where the likelihood that a motion to dismiss may "result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay").